United States District Court
Southern District of Texas
**ENTERED**
February 11, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANDREW BARNES, TDCJ #1531062, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-15-0815 |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal | § | |
| Justice - Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

The petitioner, Andrew Barnes, seeks a writ of habeas corpus under 28 U.S.C. § 2254 to challenge a state court conviction that has resulted in his incarceration by the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ"). The respondent, William Stephens, has filed a Motion for Summary Judgment with Brief in Support ("Motion for Summary Judgment") (Docket Entry No. 19), along with a copy of the state court record. Barnes has filed a response in opposition to the Motion for Summary Judgment ("Response") (Docket Entry No. 26). After considering all of the pleadings, the state court record, and the applicable law, the court will grant respondent's Motion and will dismiss this action for the reasons explained below.

## I.  Background

A local grand jury returned an indictment against Barnes in cause number 1179556, charging him with capital murder for killing Robert Jackson by striking him with a baseball bat during the course of either a burglary or a robbery.[1]  Because the State did not seek the death penalty, Barnes faced a mandatory sentence of life without parole if convicted of capital murder as charged in the indictment.[2]   A jury in the 183rd District Court of Harris County, Texas, found Barnes guilty of the lesser-included offense of murder and sentenced him to 40 years' imprisonment in TDCJ.[3]

On direct appeal Barnes argued that the evidence was factually and legally insufficient to rebut his claim of self-defense.[4] Barnes also argued that the trial court erred by excluding evidence of the victim's violent character and by admitting prejudicial

---

[1]Indictment, Docket Entry No. 10-1, p. 7.

[2]See TEX. PENAL CODE § 12.31(a)(2) (2008).  The record indicates that Barnes was 16 at the time the offense occurred and 18 at the time of his trial in 2008.  See Reporter's Record, vol. 4, Docket Entry No. 12-1, pp. 22-23; Reporter's Record, vol. 6, Docket Entry No. 12-6, p. 9.  Texas law now excludes from eligibility for a sentence of life without parole individuals who committed the offense of capital murder while younger than 18 years of age.  See TEX. PENAL CODE § 12.31(a)(2) (2015); see also Acts 2013, 83rd Leg., 2nd C.S. ch. 2 (S.B. 2), § 1, eff. July 22, 2013.

[3]Judgment of Conviction by Jury, Docket Entry No. 10-10, p. 4.

[4]Brief for Appellant ("Appellant's Brief") (Part 1), Docket Entry No. 10-21, p. 4.

autopsy photographs.[5]   Barnes argued further that he was denied effective assistance of counsel during voir dire, closing arguments, and the punishment phase of the trial.[6]   The intermediate state court of appeals rejected all of Barnes' arguments and affirmed the conviction after summarizing the evidence at length:

> Houston Police Department ("HPD") Officer P. Jackson testified that on the morning of September 3, 2006, he was dispatched to the home of sixty-nine-year-old Robert Jackson, the complainant.   An emergency dispatcher had received a telephone call from the complainant's residence, but the caller did not speak into the phone. When he arrived at the complainant's house, Officer Jackson noted burglar bars completely enclosed the front porch and front door and "the burglar bar doors were locked."    On the front door was a sign that read, "Occupants are armed; Intruders will be shot." A window to the left of the front door, inside the enclosed front porch, was broken.   Because he was unable to enter through the front door, Jackson went around the house, through an open gate, to the backyard, where he saw that "the back door and all the windows were boarded up." Seeing nowhere to enter the house from the backyard, Jackson returned to the broken window in the front of the house where he heard what sounded like a radio playing at a low volume.   Jackson looked through the broken window and "saw what looked to be an outline of a person's upper torso" on the floor.   Jackson pounded on the house, yelled that he was a police officer, and asked if everything was "okay."   He then thought that he saw the person on the floor raise his hand intermittently as if he needed help.
>
> Using a key that a neighbor showed him under the complainant's mailbox, Officer Jackson entered the house and saw blood "all over" — on the kitchen counter, on the floor, on a desk, and on a telephone.   He saw the

_____

[5]Id.

[6]Id.

complainant sitting in a chair by a desk with blood "on his face, all over his head, his arms, his hands, [and] his legs." Jackson asked the complainant, "Do you know who did it?" The complainant responded, "It's the boy that cuts my grass."

HPD Officer R. King testified that when he arrived at the complainant's house after Officer Jackson, he saw "blood spatter evidence on many surfaces" and a "pool of coagulated blood" on the floor. King also saw a knife lying on the living room floor.

King explained that later in the day, he received information about a possible suspect at appellant's house, which is two blocks away from the complainant's house. King and HPD Officer R. Moreno went to appellant's house and knocked on the door. A man answered the door and allowed them to enter the house, where they found appellant standing in a bedroom closet. King informed appellant that he was under arrest and searched him for weapons and identification. In appellant's left hip pocket, King discovered the complainant's wallet. King also testified that appellant "could have been under the influence of some substance that made him more lethargic" when he was arrested.

HPD Crime Scene Unit Officer D. Lambright testified that after he arrived at the complainant's home, he collected a baseball bat that officers had found in a vacant lot near the complainant's house. Lambright noted that the bat had blood and scratches on it. When he examined the broken window at the complainant's home, Lambright determined that it had been "broken with a blunt object" and "was struck from the outside to the inside." Lambright explained that the blood spatter in the complainant's living room indicated that the complainant had been bludgeoned. He noted that the knife found on the living room floor only had small droplets of blood on it, indicating that the knife had not been used to cut anyone.

Lambright further testified that on a table in the complainant's master bedroom he saw a "revolver-type handgun," which appeared to have "been there for a while." Lambright also saw a large number of pill bottles, with prescription labels made out to the complainant, in the master bathroom and the living room. In the living room, Lambright retrieved from the

complainant's desk a notebook in which the complainant had written appellant's name and phone number and a note that appellant would cut the complainant's grass. Lambright retrieved this notebook because, at the hospital, the complainant told HPD Sergeant J. Parker that the name of the person who attacked him was on a pad on his table.

When Officer Lambright later went to appellant's house, he recovered from appellant's room three bottles of pills with the complainant's name on them. One of the bottles, which was labeled "Claritin D," was empty. The other two bottles contained pills and were labeled "Hydralazine" and "Amoxi/Clav."

Harris County Assistant Medical Examiner M. Anzalone testified that the complainant died on March 1, 2007, after six months of "required chronic ventilatory support and nursing home placement." Based on his autopsy on the complainant's body, Anzalone opined that fractures on the complainant's skull indicated that he had been hit in the head at least five times.

Appellant testified that in 2000, when he was eleven years old, he began mowing the complainant's lawn and would also do other jobs around his house. Sometimes the complainant would "just want to talk to [appellant] or have [him] inside [the] house." At some point, the complainant began to "[t]ouch [appellant's] private parts" approximately "once every couple of weeks." In 2005, when appellant told the complainant that he "was tired of it and [he] didn't want it to go on anymore," the complainant "started cursing at [him] ... and said that [appellant had] to let him do things to [appellant] or [the complainant] was going to call the police," and accuse appellant of stealing his wallet. The complainant did later accuse appellant of stealing his wallet, and when HPD Officer Hadnot contacted appellant about the accusation, appellant "made a statement that [he] didn't steal [the complainant's] wallet that day." Appellant explained that the complainant further began to call appellant's telephone "and threaten to kill [him]." However, they reconciled later that summer, and appellant started working for him again.

Appellant further testified that the complainant, over time, had given him many bottles of pills and that the pill bottles found by police officers in his room had

been given to him sometime in 2004 or 2005.  Although, appellant asserted that he had not stolen any pills from the complainant, he acknowledged that he had been convicted of possessing a controlled substance in 2003 and of burglary in 2005.

Appellant explained that at 10:30 p.m. on September 2, 2006, the complainant picked him up from his house and drove him to the complainant's house, where the complainant gave him seven or eight pills.  After appellant swallowed five of the pills and put the rest in his pocket, he then "passed out."  When he awoke, the complainant "was over [him], touching [his] private parts," and appellant said, "Let me out.  I don't want this to happen anymore."  They began arguing, and the complainant said, "I'm going to kill you, you little bastard."  Appellant found the complainant's wallet by the fireplace and said, "Is this the wallet you're going to accuse me of stealing?  I'm going to take this to my mom and Officer Hadnot."  Appellant explained that he did not "intend to use it for [his] own gain."  Appellant put the wallet in his pocket and said, "Let me out right now."  The complainant threatened appellant again and then "opened his front door to let [appellant] out as [he] requested."

After appellant walked onto the front patio area, which was enclosed by the locked burglar bars, the complainant "slammed the door ... and started screaming he was going to kill [appellant] and blow [his] head off."  Appellant screamed for help for about two minutes and then grabbed a baseball bat that was near the porch and broke a window so that he could go into the house to "look for some keys or another window that might be open without bars" to get away from the house.  When he entered the house through the window, appellant saw the complainant standing near the kitchen with a knife in his hand.  When appellant told the complainant to give him a key and let him out, the complainant "came at [appellant] with the knife."  Appellant then hit the complainant with the baseball bat.  After hitting the complainant, appellant "ran to the back part of the house looking for a window or keys," but, finding nothing, he returned to the living room, where the complainant attacked him again without the knife.  Appellant "hit him some more times" until the complainant fell down.  Then appellant "jumped back through the window and ... [saw that he] might be able to squeeze through the top of the burglar bars."  After squeezing through the bars, appellant went back to his house.

-6-

On cross-examination, appellant testified that he had cut his hands and arms when he crawled through the broken window.  He admitted that he did not see the complainant with a firearm in his hands that night even though the complainant had approximately two minutes to retrieve the firearm from his bedroom while appellant was on the front porch.   Appellant agreed that when he first hit the complainant with the baseball bat, he hit him on the head.  Then, returning to the living room, appellant hit him on the head "around four or five times" with the baseball bat even though the complainant did not "have a knife or gun in his hand at the time."  When he struck the complainant with the last several blows, appellant agreed that the complainant had dropped to one knee.

Sandra Villalta and Ben Amos, who lived in the same neighborhood as the complainant and appellant, both testified about numerous incidents in which the complainant threatened to kill them and had used crude and abusive language towards them.  Villalta testified that the complainant, who had threatened to kill her husband, had previously accused her husband of stealing from him and trespassing on his property.  Amos testified that once, when he was driving down the complainant's street, the complainant came at him with a baseball bat and a gun and threatened to kill him.  HPD Officer A. Castillo testified that the complainant had previously called him to complain about neighbors trespassing on his property and that the complainant had threatened three times to kill his neighbors if they did not stop.  HPD Officer D. Carbajal testified that he previously responded to a call from the complainant who alleged that appellant had stolen money from his wallet.  Carbajal explained that the complainant did not want to "pursue charges.  [The complainant] just wanted to cover his end of the deal-he wanted to cover himself in case the [appellant] stated he fondled him."

Barnes v. State, No. 01-08-00797-CR, 2009 WL 3248172, *1-4 (Tex. App. — Hous. [1st Dist.] Oct. 8, 2009) (unpublished).  Thereafter, the Texas Court of Criminal Appeals refused Barnes' petition for discretionary review.  See Barnes v. State, PDR No. 1634-09 (Tex. Crim. App. March 24, 2010).

-7-

Barnes challenged his conviction further on collateral review,[7] arguing that he was entitled to relief because:   (1) he was denied effective assistance of counsel when his trial attorney advanced a theory of self-defense rather than a defense of "sudden passion"; (2) he was denied effective assistance of counsel on direct appeal when his attorney failed to raise an ineffective-assistance claim regarding his trial counsel's failure to advance from the beginning of trial a defense of sudden passion; (3) the trial judge was biased against him; (4) trial counsel had a conflict of interest; (5) evidence of the victim's character was improperly excluded; and (6) the jury charge was misleading and confusing.[8]   The state habeas corpus court, which also presided over Barnes' trial, entered findings of fact and concluded that Barnes was not entitled to relief.[9]   The Texas Court of Criminal

---

[7]The background and procedural history of Barnes' efforts to obtain state collateral review are set forth in more detail in the court's Memorandum Opinion and Order dated August 11, 2015 (Docket Entry No. 14). In that Order the court denied the respondent's motion to dismiss based on the one-year statute of limitations found at 28 U.S.C. § 2244(d)(1), concluding that Barnes was entitled to equitable tolling.   The respondent re-urges his argument that the petition is time-barred, but the court declines the invitation to reconsider its previous ruling and does not address this issue further.

[8]Application for a Writ of Habeas Corpus, Writ No. 81,067-06, Docket Entry No. 12-23, pp. 10-20.

[9]Findings of Fact, Conclusions of Law, and Order, Writ No. 81,067-06, Docket Entry No. 12-23, pp. 60-73.

Appeals agreed and denied relief without a written order on findings made by the trial court.[10]

Barnes has now filed a Petition for federal habeas corpus relief under 28 U.S.C. § 2254.[11] In that Petition Barnes raises the same claims that were rejected on direct appeal and state habeas corpus review.[12] The respondent has filed a Motion for Summary Judgment, arguing that Barnes is not entitled to relief.[13]

## II.  **Standard of Review**

To the extent that the petitioner's claims were adjudicated on the merits in state court, these claims are subject to review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254(d). Under the AEDPA a federal habeas corpus court may not grant relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). "A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior

---

[10]Action Taken, Writ No. 81,067-06, Docket Entry No. 12-22, p. 1.

[11]Petition for a Writ of Habeas Corpus By a Person in State Custody ("Petition"), Docket Entry No. 1.

[12]Id. at 6-8.

[13]Motion for Summary Judgment, Docket Entry No. 19.

decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." Matamoros v. Stephens, 783 F.3d 212, 215 (5th Cir. 2015) (citations omitted); see also Williams v. Taylor, 120 S. Ct. 1495, 1519-20 (2000).   To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice." Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (quoting White v. Woodall, 134 S. Ct. 1697, 1702 (2014)).   "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011)).

The AEDPA standard "imposes a 'highly deferential standard for evaluating state-court rulings, . . . [which] 'demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 130 S. Ct. 1855, 1862 (2010) (citations omitted).  This standard is intentionally "difficult to meet" because it was meant to bar relitigation of claims already rejected in state proceedings and to preserve federal habeas review as "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Richter, 131 S. Ct. at 786 (quoting Jackson v. Virginia, 99 S. Ct. 2781,

2796, n.5 (1979) (Stevens, J., concurring)); see also White, 134 S. Ct. at 1702.

A state court's factual determinations are also entitled to deference on federal habeas corpus review.  Findings of fact are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  This presumption of correctness extends not only to express factual findings, but also to the state court's implicit findings.  See Garcia v. Quarterman, 454 F.3d 441, 444-45 (5th Cir. 2006) (citing Summers v. Dretke, 431 F.3d 861, 876 (5th Cir. 2005); Young v. Dretke, 356 F.3d 616, 629 (5th Cir. 2004)).  If a claim presents a question of fact, a petitioner cannot obtain federal habeas relief unless he shows that the state court's denial of relief "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  A federal habeas corpus court "may not characterize these state-court factual determinations as unreasonable 'merely because [it] would have reached a different conclusion in the first instance.'"  Brumfield v. Cain, 135 S. Ct. 2269, 2277 (2015) (quoting Wood v. Allen, 130 S. Ct. 841, 849 (2010)).  "Instead, § 2254(d)(2) requires that [a federal court] accord the state trial court substantial deference."  Id.

### III.  Discussion

For ease of analysis, the court will first consider Barnes' challenge to the sufficiency of the evidence, followed by his

allegations of erroneous evidentiary rulings by the trial court, bias on the trial court's part, mistakes in the jury charge, and ineffective assistance of counsel.

## A.   Sufficiency of the Evidence

Barnes contends that the evidence at trial was factually and legally insufficient to rebut his claim of self-defense.[14] These claims were rejected on direct appeal.  The state court held that the evidence was both legally and factually sufficient to support the jury's implied finding that Barnes was not justified in using deadly force when he killed Robert Jackson:

> In his first and second issues, appellant argues that the evidence is legally and factually "insufficient to rebut appellant's claim of self defense" because the evidence established that appellant "reasonably believed he could not have retreated ... [,] that [the complainant] was about to use deadly force against him ... [, and] that he had to protect himself by the use of deadly force."

> We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. <u>Williams v. State</u>, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (citing <u>Jackson v. Virginia</u>, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979)).  In doing so, we give deference to the responsibility of the fact-finder to fairly resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from the facts.  <u>Id.</u>  However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused.  <u>Id.</u>

---

[14]Petition, Docket Entry No. 1, p. 8.

In a factual sufficiency review, we view all the evidence in a neutral light, both for and against the finding, and set aside the verdict if the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, _i.e._, that the verdict seems "clearly wrong and manifestly unjust," or the proof of guilt, although legally sufficient, is nevertheless against the great weight and preponderance of the evidence. <u>Watson v. State</u>, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006). We note that a jury is in the best position to evaluate the credibility of witnesses, and we afford due deference to the jury's determinations. <u>Marshall v. State</u>, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). Although we should always be "mindful" that a jury is in the best position to decide the facts and that we should not order a new trial simply because we disagree with the verdict, it is "the very nature of a factual-sufficiency review that ... authorizes an appellate court, albeit to a very limited degree, to act in the capacity of a so-called 'thirteenth juror.'" <u>Watson</u>, 204 S.W.3d at 416–17. Thus, when an appellate court is "able to say, with some objective basis in the record, that the <u>great weight and preponderance</u> of the (albeit legally sufficient) evidence contradicts the jury's verdict[,] ... it is justified in exercising its appellate fact jurisdiction to order a new trial." <u>Id.</u> at 417.

A person is justified in using deadly force if he has a reasonable belief that it is immediately necessary to protect himself from another's use of deadly force and a reasonable person in his place would not retreat. <u>See</u> TEX. PENAL CODE ANN. §§ 9.31(a), 9.32(a) (Vernon 2003).[] A defendant has the burden of producing some evidence to support a claim of self-defense. <u>Zuliani v. State</u>, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003) (citing <u>Saxton v. State</u>, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991)). Once a defendant presents evidence of self-defense, the State has the burden of persuasion in disproving the evidence of self-defense. <u>Id.</u> The State is not required to produce evidence refuting the self-defense claim; the State need only prove its case beyond a reasonable doubt. <u>Id.</u> A jury verdict of guilty is an implicit finding rejecting a defendant's self-defense theory. <u>Id.</u>

When an appellant challenges the legal sufficiency of the rejection of a self-defense claim, it is well-settled law that appellate courts "look not to whether the State presented evidence which refuted appellant's [defensive

-13-

evidence], but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found ... against appellant on the [defensive] issue beyond a reasonable doubt." Saxton, 804 S.W.2d at 914. In a factual sufficiency review of the rejection of a self-defense claim, we review "all of the evidence in a neutral light and [ask] whether the State's evidence taken alone is too weak to support the finding and whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence." Zuliani, 97 S.W.3d at 595.

In support of his legal sufficiency challenge, appellant emphasizes that the complainant had a reputation in the community for carrying a weapon and for aggressive conduct; the complainant's home had a sign on the front door stating, "Occupants are armed; Intruders will be shot"; the burglar bars and sealed windows in the complainant's home made leaving the home difficult; a handgun was lying on a TV stand in the complainant's bedroom; a bloody knife was found near the complainant's body; and appellant knew the complainant had weapons, feared the complainant, and believed the complainant would kill him.

Viewing all of the evidence in the light most favorable to the verdict, we note the critical fact that appellant was able to climb into, or out of, the complainant's front porch through the locked burglar bars. He broke the complainant's window to enter the house and struck the complainant with a baseball bat several times even after the complainant had dropped his knife and had fallen to one knee. The complainant's wallet and medicine were subsequently found in appellant's bedroom. Given this evidence, a reasonable trier of fact could have disbelieved appellant's explanation that he had struck the complainant repeatedly with a baseball bat because he was in fear of his life. A reasonable trier of fact could have found that appellant either did not have a reasonable belief that such force was immediately necessary to protect himself or that he could have retreated. Accordingly, we hold that the evidence is legally sufficient to support the jury's implied finding that appellant was not justified in using deadly force.

In support of his factual sufficiency challenge, appellant emphasizes that the complainant "had an

-14-

aggressive, quarrelsome character" and a reputation in
the community for "displaying weapons to threaten
neighbors and passers-by"; the complainant's house "was
a fortress with limited means of egress"; the complainant
owned weapons; and the complainant had threatened to kill
appellant and others in the neighborhood numerous times.

Viewing the evidence in a neutral light, it is true that
the complainant had previously threatened to kill certain
neighbors, passers-by, and appellant.  The complainant
had charged others, either while carrying a bat or other
implement, but he never actually physically assaulted any
of them.  Appellant himself testified that before any
violence had occurred, the complainant let him out of the
house onto the front porch.  Most importantly, although
burglar bars enclosed the front porch and appellant
testified that he had broken back into the house only to
find another way to leave, appellant also testified that
he was later physically able to squeeze through the bars
to leave the home.  The complainant did have a knife in
his hand when appellant re-entered the house, but
appellant testified that the complainant dropped the
knife after appellant hit him with the baseball bat.
Appellant also admitted that he did not see the
complainant with any other kind of weapon in his hands
after he struck the complainant, and he testified that he
hit the complainant an additional four or five times in
the head, striking the final blows after the complainant
had dropped to one knee.

Viewing the evidence in a neutral light, a reasonable
trier of fact could have concluded that it was not
necessary for appellant to use deadly force or that a
reasonable person in appellant's place would have
retreated.  See TEX. PENAL CODE ANN. §§ 9.31(a), 9.32(a).
Thus, we conclude that the verdict is not "clearly wrong
and manifestly unjust" and the proof of guilt is not
against the great weight and preponderance of the
evidence.  See Watson, 204 S.W.3d at 414-15.  Accordingly,
we hold that the evidence is factually sufficient to
support the jury's implied finding that appellant was not
justified in using deadly force.

Barnes v. State, No. 01-08-00797-CR, 2009 WL 3248172, *4-6 (Tex.

App. — Hous. [1st Dist.] Oct. 8, 2009, pet. ref'd) (footnote

omitted).  Because the Texas Court of Criminal Appeals refused

discretionary review without a written order, the court considers the intermediate appellate court's decision as "the last reasoned opinion" on Barnes' claims. Ylst v. Nunnemaker, 111 S. Ct. 2594-95 (1991).

### 1.   Factual Sufficiency

To the extent that Barnes now seeks to challenge the factual sufficiency of the evidence on federal habeas review, his claim is not cognizable because, as clearly articulated by the intermediate court of appeals, the Texas factual-sufficiency standard is based on state law. See Barnes, 2009 WL 3248172, *4 (citing Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006)).   A federal habeas corpus court does not sit as a super state supreme court for review of issues decided by state courts on state law grounds. Smith v. McCotter, 786 F.2d 697, 700 (5th Cir. 1986).   A federal court reviewing a petition under 28 U.S.C. § 2254 asks only whether a constitutional violation infected the petitioner's state trial. See Estelle v. McGuire, 112 S. Ct. 475, 480 (1991); Pemberton v. Collins, 991 F.2d 1218, 1223 (5th Cir. 1993).   Because a challenge to the factual sufficiency of the evidence does not implicate a constitutional issue, federal habeas corpus review is unavailable for this claim.

### 2.   Legal Sufficiency

On habeas corpus review of a state court conviction, challenges to the sufficiency of the evidence are governed by

Jackson v. Virginia, 99 S. Ct. 2781 (1979), which reflects the federal constitutional due process standard. See Woods v. Cockrell, 307 F.3d 353, 358 (5th Cir. 2002). "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." United States v. Davis, 735 F.3d 194, 198 (5th Cir. 2013) (quoting In re Winship, 90 S. Ct. 1068, 1073 (1970)). Thus, the Jackson standard requires that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 99 S. Ct. at 2789 (emphasis in original).

The intermediate court of appeals correctly identified the Jackson standard when deciding that the evidence was legally sufficient in Barnes' case. See Barnes, 2009 WL 3248172, *4 (citing Jackson, 99 S. Ct. 2788-89). Applying the Jackson standard, the court of appeals considered all of the evidence and concluded that the jury could have found that Barnes did not show that he was justified in using deadly force when he bludgeoned the elderly victim in the head multiple times after breaking into his house. See Barnes, 2009 WL 3248172, *5. Where a state appellate court has reviewed the sufficiency of the evidence, that court's opinion is entitled to "great weight." Parker v. Procunier, 763 F.2d 665, 666 (5th Cir. 1985) (citation omitted); see also Callins v. Collins, 998 F.2d 269, 276 (5th Cir. 1993) ("Where a state

-17-

appellate court has conducted a thoughtful review of the evidence
. . . its determination is entitled to great deference").  This
court's own review of the evidence leads it to conclude that a
rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt and decided that Barnes was
not justified in using deadly force.  See Jackson, 99 S. Ct. at
2789.

        To the extent that Barnes asks this court to re-weigh the
evidence and decide if the jury's decision was correct, this type
of inquiry is "beyond the scope of review" permitted under the
Jackson standard.  Schlup v. Delo, 115 S. Ct. 851, 868 (1995)
(discussing the standard for challenges to the legal sufficiency of
the evidence under Jackson).  A federal habeas corpus court may not
substitute its view of the evidence for that of the fact-finder.
See Weeks v. Scott, 55 F.3d 1059, 1062 (5th Cir. 1995) (citation
omitted).  Under the Jackson standard, "[a]ll credibility choices
and conflicting inferences are to be resolved in favor of the
verdict."  Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005)
(citation omitted).  Viewing all of the evidence under the
deferential standard that applies on federal habeas review, Barnes
does not show that the state court's decision was objectively
unreasonable or that he is entitled to relief under Jackson.
Accordingly, Barnes' challenge to the sufficiency of the evidence
must be denied.

## B.   Exclusion of Character Evidence

Barnes contends that the trial court erred by wrongfully excluding evidence of the victim's violent character.[15] Barnes raised this claim on direct appeal, where he claimed that the trial court erred by excluding testimony from Lydia Winterrowd, Brian McIlwain, Troy Pope, Joseph Santhoff, and James Santhoff, who would have testified that the victim "had an aggressive character and had committed prior aggressive acts."[16]

The intermediate state court of appeals acknowledged that a defendant who raises the issue of self-defense may present evidence of the victim's violent character to show "the reasonableness of the defendant's fear of danger, or to show that the deceased was the first aggressor."  Barnes, 2009 WL 3248172, *6-7 (quoting Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002)).  The court of appeals summarized the proffered testimony from Winterrowd and the Santhoffs, as follows:

> Here, Winterrowd's proffered testimony was that the complainant had discharged a firearm outside her front door, left human feces at her door, and attempted to "run [her] over with his car" as she was walking through a parking lot.  Appellant's trial counsel argued that her testimony was admissible as reputation evidence and as specific "bad acts."  Joseph and James Santhoff both testified that they saw the complainant walk down his driveway and wave his fist or gardening tools at them as they drove past his house.  Additionally, James Santhoff testified that one morning the complainant waved him down

---

[15]Petition, Docket Entry No. 1, pp. 7-8.

[16]Appellant's Brief (Part 5), Docket Entry No. 10-25, pp. 3-5.

> as he drove by, opened his car door, and began "yelling
> at [Santhoff] and screaming profanities, saying he was
> going to kick [Santhoff's] butt and that he was mad that
> [Santhoff] was driving so fast down his street."
> Appellant's trial counsel argued that this testimony
> demonstrated that the complainant had "a violent temper"
> and would counter the State's argument that the
> complainant was a "frail, tiring, old man in his dotage."

Barnes, 2009 WL 3248172, *8.  Pope purportedly would have testified

that the victim was "not a feeble old man in his dotage."  Id.

McIlwain would have testified that the victim's house was "strewn

with liquor bottles and pill bottles."  Id. at *9.

The court of appeals held that the proposed testimony from

Winterrowd and the Santhoffs was properly excluded because Barnes

failed to demonstrate that the testimony was sufficiently

probative:

> On appeal, appellant asserts that the testimony of
> Winterrowd and the Santhoffs about specific acts of the
> complainant is "probative of [his] state of mind" to show
> he was the aggressor.  Appellant did present evidence of
> violent and aggressive acts committed by the complainant
> that tended to raise the issue of self-defense.  However,
> in his brief, appellant does not offer any explanation as
> to how the complainant's acts towards Winterrowd and the
> Santhoffs is probative as to the complainant's state of
> mind during the incident in question.  See TEX. R. EVID.
> 404(b); Torres, 71 S.W.3d at 760.
>
> To be admissible, a witness' testimony about the
> aggressive conduct of a complainant must explain the
> aggressive conduct toward a defendant at the time of the
> confrontation and in a manner other than demonstrating
> character conformity only.  Torres, 71 S.W.3d at 762.
> Here, appellant did not explain to the trial court and
> does not explain in his brief how the testimony of
> Winterrowd and the Santhoffs demonstrates more than
> character conformity.  Unlike the situations presented in
> Torres, Jenkins and Tate, where the witnesses' testimony
> about the deceaseds' prior violent acts clarified the

-20-

> deceaseds' confrontations with the defendants, appellant
> offers no explanation as to how the complainant's actions
> towards Winterrowd and the Santhoffs clarify his actions
> toward appellant during the incident in question.
> Accordingly, we hold that the trial court did not err in
> excluding the testimony of Winterrowd and the Santhoffs.

Barnes, 2009 WL 3248172, *8.   The court of appeals concluded

further that Barnes did not preserve error for review with respect

to Pope's proposed testimony and that Barnes also failed to explain

in his briefing how the trial court erred in excluding the proposed

testimony from McIlwain, thereby waiving review.   Barnes, 2009

WL3248172, *9.  Without providing any additional analysis the court

of appeals concluded, in the alternative, that "the trial court did

not err in excluding the testimony of Pope and McIlwain."   Id.

### 1.   Procedural Default

Under the doctrine of procedural default, a federal habeas

court "will not consider a claim that the last state court rejected

on the basis of an adequate and independent state procedural

ground."   Busby v. Dretke, 359 F.3d 708, 718 (5th Cir. 2004)

(citation omitted).   The respondent correctly notes that Barnes'

failure to preserve error or file adequate briefing with respect to

the proposed testimony from Pope and McIlwain constitutes

procedural defaults that are adequate to bar federal review.[17]   See

Corwin v. Johnson, 150 F.3d 467, 473 (5th Cir. 1998) (The Texas

rule requiring a contemporaneous objection to preserve error is

---

[17]Motion for Summary Judgment, Docket Entry No. 19, p. 25.

-21-

"strictly and regularly applied," therefore, "an adequate procedural bar."); see also Roberts v. Thaler, 681 F.3d 597, 607 (5th Cir. 2012) (holding that the Texas appellate rule regarding inadequate briefing constitutes "a valid procedural bar to federal habeas relief").

If a petitioner has committed a procedural default, federal habeas corpus review is available only if he can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that "failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 111 S. Ct. 2546, 2565 (1991). Barnes makes no effort to demonstrate that any of these exceptions apply. Accordingly, Barnes' claim concerning the trial court's decision to exclude testimony from Pope and McIlwain is barred from review.

## 2. Barnes Does Not State a Claim for Relief

The respondent argues further that Barnes fails to show that the proposed testimony was improperly excluded or that he is otherwise entitled to relief.[18] As the court of appeals' decision reflects, the admissibility of the proposed evidence concerns an interpretation of state law. See Barnes, 2009 WL 3248172, *8-9. Importantly, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."

---

[18]Motion for Summary Judgment, Docket Entry No. 19, pp. 24-25.

<u>Bradshaw v. Richey</u>, 126 S. Ct. 602, 604 (2005) (per curiam) (citations omitted). Thus, federal habeas corpus courts typically "do not review state courts' application of state evidence law." <u>Jones v. Cain</u>, 600 F.3d 527, 536 (5th Cir. 2010) (citing <u>Castillo v. Johnson</u>, 141 F.3d 218, 222 (5th Cir. 1998); <u>Mercado v. Massey</u>, 536 F.2d 107, 108 (5th Cir. 1976)); <u>see</u> <u>also</u> <u>Little v. Johnson</u>, 162 F.3d 855, 862 (5th Cir. 1998) ("In habeas actions, this court does not sit to review the mere admissibility of evidence under state law."). A federal habeas corpus court will not grant relief from alleged errors in a state trial court's evidentiary rulings unless the application of a state evidentiary rule violates the United States Constitution. <u>See</u> <u>Jones</u>, 600 F.3d at 536 (citing <u>Estelle v. McGuire</u>, 112 S. Ct. 475 (1991)); <u>see</u> <u>also</u> <u>Little</u>, 162 F.3d at 862 (noting that erroneous state evidentiary rulings merit federal habeas relief only where the errors "are so extreme that they constitute a denial of fundamental fairness").

The federal habeas Petition filed by Barnes does not allege facts demonstrating that the trial court erred, and he does not otherwise demonstrate that a constitutional violation occurred when the trial court excluded the proposed character evidence from Winterrowd, the Santhoffs, Pope, or McIlwain.[19] In his Response Barnes cites to a series of cases, including <u>Holmes v. South Carolina</u>, 126 S. Ct. 1727, 1734-35 (2006) (holding that exclusion of defense evidence of third-party guilt denies defendant

---

[19]Petition, Docket Entry No. 1, p. 7.

a fair trial); <u>Webb v. Texas</u>, 93 S. Ct. 351, 353-54 (1972) (per curiam) (holding that the trial judge's threatening remarks to the defendant's sole witness deprived defendant of due process); <u>Washington v. Texas</u>, 87 S. Ct. 1920, 1925 (1967) (holding that defendants have a fundamental right to have compulsory process for obtaining witnesses who are physically and mentally capable of testifying and whose testimony would have been relevant and material to the defense); <u>Hardin v. Estelle</u>, 484 F.2d 944, 945 (5th Cir. 1973) (affirming the district court's decision to grant habeas relief based on the denial of compulsory process); and <u>United States v. Burks</u>, 470 F.2d 432, 437-38 (D.C. Cir. 1972) (holding that the victim's prior conviction for child cruelty was admissible in a murder trial to show the victim's violent character).[20]  However, none of these cases call into question the state court's conclusion that because the proposed testimony was not sufficiently probative, it was correctly excluded.  Thus, the cases cited by Barnes are distinguishable.  Barnes does not otherwise demonstrate that the proposed testimony was excluded in violation of the constitution or that he is otherwise entitled to relief under the governing habeas corpus standard of review.

### 3.    The Error, if any, was Harmless

Even assuming that there was an error of constitutional dimension, the respondent argues that the error, if any, was

_____

[20]Response, Docket Entry No. 26, p. 8.

harmless.[21]   The standard for reviewing trial court error in a
federal habeas petition is outlined in Brecht v. Abrahamson, 113
S. Ct. 1710 (1993); see also Fry v. Pliler, 127 S. Ct. 2321, 2328
(2007) (holding that, on federal habeas corpus review under 28
U.S.C. § 2254, the Brecht standard of harmless error applies).   To
prevail Barnes must show that the trial court's error had a
"substantial and injurious effect or influence in determining the
jury's verdict."  Brecht, 113 S. Ct. at 1722 (quoting Kotteakos v.
United States, 66 S. Ct. 1239, 1253 (1946)).   Under this standard
a habeas petitioner is not entitled to relief based on trial error
unless he can establish that it resulted in "actual prejudice."
Brecht, 113 S. Ct. at 1722 (citing United States v. Lane, 106
S. Ct. 725, 732 (1986)); Davis v. Ayala, 135 S. Ct. 2187, 2198
(2015) (The Brecht standard reflects the view that a "State is not
to be put to th[e] arduous task [of retrying a defendant] based on
mere speculation that the defendant was prejudiced by trial error;
the court must find that the defendant was actually prejudiced by
the error.") (quotation omitted).

     The record does not reflect that Barnes suffered actual
prejudice as a result of the trial court's decision to exclude
testimony from the proposed witnesses (Winterrowd, the Santhoffs,
Pope, and McIlwain) regarding the victim's character.   At trial
Barnes testified that the victim was a "mean" old man who sexually

---

[21]Motion for Summary Judgment, Docket Entry No. 19, pp. 23-24.

assaulted or molested him and threatened to kill him multiple times during their turbulent relationship.[22]  To reinforce the characterization that the victim was prone to violence Barnes was able to call several other witnesses who testified about the victim's aggressive nature.[23]  Because Barnes was not denied the ability to present evidence about the victim's mean-spirited character, he has not shown that the trial court's decision to exclude testimony from Winterrowd, the Santhoffs, Pope, and McIlwain resulted in actual prejudice or that it had a substantial and injurious effect on the verdict.  Accordingly, the court concludes that the error, if any, was harmless.

## C.   Admission of Autopsy Photographs

Barnes contends that the trial court erred by admitting prejudicial autopsy photographs.[24]  This claim was rejected by the intermediate court of appeals, which held that "the probative value of the photographs was not substantially outweighed by any prejudicial effect," therefore, "the trial court did not err in admitting the autopsy photographs into evidence."  <u>Barnes</u>, 2009 WL 3248172, **10-11.

---

[22]Reporter's Record, vol. 6, Docket Entry No. 12-6, pp. 74, 80, 83-84, 85, 88.

[23]Reporter's Record, vol. 8, Docket Entry No. 12-9, pp. 22-37, 38-42, 47-51, 54-66.

[24]Petition, Docket Entry No. 1, p. 8.

As with Barnes' claim concerning the exclusion of character evidence, his challenge to the trial court's evidentiary ruling concerning the autopsy photographs turns on a question of state law that is not subject to federal habeas review unless he demonstrates that a constitutional violation occurred.  See Jones, 600 F.3d at 536.  Barnes makes no effort to show that the photographs were improperly admitted.  The Fifth Circuit has repeatedly emphasized that "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding."  Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir. 1983) (citing Schlang v. Heard, 691 F.2d 796, 798 (5th Cir. 1982) (collecting cases)).  Barnes' bare assertion that the photographs were improperly admitted, without more, is not sufficient to establish error on the trial court's part or to state a claim for relief on federal habeas review.  Because Barnes has failed to articulate a valid claim, his request for relief on this issue will be denied.

D.   **Bias by the Trial Court**

Barnes contends that the trial court demonstrated bias against him by participating in a discussion about a plea agreement proposed by the State.[25]  The record reflects that shortly before the State rested its case, the parties had a discussion in chambers about the State's proposed plea bargain offer of a life sentence.[26]

---

[25]Petition, Docket Entry No. 1, p. 6.

[26]Reporter's Record, vol. 6, Docket Entry No. 12-6, pp. 8-21.

During that lengthy exchange the trial court expressed concern that Barnes could be found guilty and explained the difference between the sentence that Barnes faced if convicted of capital murder, i.e., life without parole, and the life sentence proposed by the State, which would grant him parole eligibility by the time he turned 48.[27]   Barnes contends that the discussion is evidence of bias and that the trial judge should have recused herself after this exchange.[28]   The state habeas corpus court, which also presided over the trial, rejected this contention, finding that Barnes failed "to allege and prove acts of judicial bias that would entitle him to relief on his claim."[29]

Barnes fails to allege facts that would demonstrate that he is entitled to relief on this claim.   To the extent that Barnes claims that the trial court had already made up her mind about his guilt, the Supreme Court has held that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of ... prior proceedings do not constitute a basis for [recusal] unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky v. United States, 114 S. Ct. 1147, 1157 (1994).   "Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even

_____

[27]Id. at 9-12.

[28]Petition, Docket Entry No. 1, p. 6.

[29]Findings of Fact, Conclusions of Law, and Order, Docket Entry No. 12-23, p. 65.

hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." Id. Barnes does not allege facts showing that the trial judge displayed any animosity towards him or favoritism towards the State. Absent evidence of judicial bias, Barnes fails to establish that the state court's conclusion was objectively unreasonable or that he is entitled to relief under the federal habeas corpus standard of review.

**E.  Errors in the Jury Charge**

Barnes contends that the jury charge was misleading because it contained significant errors.[30]  Barnes alleges that the charge erroneously advised the jury that the victim was "shot . . . with a firearm," when no firearm was used.[31]  Barnes also asserts that the charge erroneously advised the jury that he had elected not to testify, when in fact he did testify during the guilt/innocence phase of the trial.[32]  Barnes contends further that the charge contained "numerous theories" under which the jury could convict him of an offense, which was confusing.[33]

---

[30]Petition, Docket Entry No. 1, p. 8.

[31]Id.

[32]Id.  Barnes indicates in his Petition that he testified at both the guilt/innocence and the punishment phases of the trial. Id. The record reflects, however, that Barnes did not testify during the punishment phase.  See Reporter's Record, vol. 10, Docket Entry No. 12-10, pp. 83, 86-88; Docket Entry No. 12-11, pp. 1-16.

[33]Id.

### 1.   Procedural Default

The respondent contends that this claim is barred by the doctrine of procedural default, noting that petitioner did not raise his claim concerning the jury charge on direct appeal when he should have.[34]   When Barnes raised this claim on state habeas review, the court found that the claim was procedurally barred because it had not been raised on direct appeal.[35]   In doing so, the state habeas corpus court relied on Ex parte Gardner, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996), which holds that failure to raise an issue apparent from the trial court record on direct appeal bars consideration of that issue on state habeas review.[36]   The Fifth Circuit has repeatedly recognized that the holding in Gardner is an independent state procedural rule that is adequate to foreclose federal habeas review.  See Brewer v. Quarterman, 466 F.3d 344, 347 (5th Cir. 2006); Aguilar v. Dretke, 428 F.3d 526, 535 (5th Cir. 2005); Soria v. Johnson, 207 F.3d 232, 249 (5th Cir. 2000).  Barnes fails to show that this claim is not barred by the doctrine of procedural default.  See Coleman, 111 S. Ct. at 2565.  Accordingly, this claim is barred from federal review.

---

[34]Motion for Summary Judgment, Docket Entry No. 19, p. 27.

[35]Findings of Fact, Conclusions of Law, and Order, Docket Entry No. 12-23, pp. 65-66.

[36]Id.

## 2.   The Claim Lacks Merit

Alternatively, the respondent argues that the claim lacks merit.[37]  The propriety of jury instructions in a state criminal trial presents an issue of state law and, as such, error in the jury charge does not generally form the basis for federal habeas relief.  See Estelle v. McGuire, 112 S. Ct. 475, 482 (1991). Federal habeas corpus review of state court jury instructions does not concern "whether there was prejudice to the [petitioner], or whether state law was violated, but whether there was prejudice of constitutional magnitude."  Sullivan v. Blackburn, 804 F.2d 885, 887 (5th Cir. 1986).  The relevant inquiry is whether the erroneous instruction "by itself so infected the entire trial that the resulting conviction violates due process."  McGuire, 112 S. Ct. at 482 (quoting Cupp v. Naughten, 94 S. Ct. 396, 400 (1973)); see also Henderson v. Kibbe, 97 S. Ct. 1730, 1736-37 (1977) (same).

The record does not support Barnes' claim that the jury charge contained mistakes.  The court has reviewed the jury instructions given at Barnes' trial and finds no reference to the use of a firearm.[38]  Likewise, there is no instruction in the charge given at the guilt/innocence phase of the trial that comments on the

---

[37]Motion for Summary Judgment, Docket Entry No. 19, pp. 27-28.

[38]Court's Charge on Guilt/Innocence, Docket Entry No. 10-6, pp. 5-7; Docket Entry No. 10-7, pp. 1-8; Docket Entry No. 10-8, pp. 1-5; Court's Charge on Punishment, Docket Entry No. 10-8, p. 9; Docket Entry No. 10-9, pp. 1-10.

defendant's decision not to testify.[39]  Thus, Barnes fails to show
that the jury instructions contained incorrect information.

The jury instructions presented multiple theories during the
guilt/innocence phase of the trial.[40]  The instructions asked
whether the jury could find Barnes guilty beyond a reasonable doubt
of capital murder as charged in the indictment, but also gave
jurors the option to find Barnes guilty of several lesser-included
offenses, including murder, aggravated robbery, aggravated assault,
and burglary.[41]  Ultimately, the jury found Barnes guilty of the
lesser-included offense of murder as outlined in the court's
charge.[42]  Barnes does not demonstrate that the jury instructions
on any of the lesser-included offenses were incorrect, misleading,

---

[39]Court's Charge on Guilt/Innocence, Docket Entry No. 10-6,
pp. 5-7; Docket Entry No. 10-7, pp. 1-8; Docket Entry No. 10-8,
pp. 1-5.  Because Barnes did not testify at the punishment phase of
the trial, the court's charge on punishment did contain the
following instruction:

> You are instructed that the defendant may testify in
> his own behalf if he chooses to do so, but if he elects
> not to do so, that fact cannot be taken by you as a
> circumstance against him nor prejudice him in any way.
> The defendant has elected not to testify in this
> punishment phase of trial, and you are instructed that
> you cannot and must not refer to or allude to that fact
> throughout your deliberations or take it into
> consideration for any purpose whatsoever.

Court's Charge on Punishment, Docket Entry No. 10-9, p. 5.

[40]Court's Charge on Guilt/Innocence, Docket Entry No. 10-7,
pp. 2-4.

[41]Id.

[42]Verdict on Guilt/Innocence, Docket Entry No. 10-8, pp. 6-7.

or confusing when considered in context with the evidence presented in this case. He does not otherwise show that the jury instructions rendered his trial fundamentally unfair in violation of due process. See McGuire, 112 S. Ct. at 482. Accordingly, Barnes is not entitled to relief on this claim.

## F. Ineffective Assistance of Counsel at Trial

Barnes alleges that he was denied effective assistance of counsel during voir dire, closing argument, and punishment.[43] These claims were rejected by the intermediate court of appeals, which held that Barnes failed to demonstrate ineffective assistance under the standard found in Strickland v. Washington, 104 S. Ct. 2052, 2064 (1984). See Barnes, 2009 WL 3248172, *11-13. Barnes contends further that his trial attorney was deficient for pursuing a theory of self-defense instead of advancing the defense of sudden passion from the start of trial.[44] The state habeas corpus court considered this allegation and concluded that Barnes' claim was without merit, also relying on Strickland.[45]

As the state courts correctly observed, claims for ineffective assistance of counsel are governed by the standard found in Strickland. See, e.g., Williams v. Stephens, 761 F.3d 561, 566

---

[43]Petition, Docket Entry No. 1, p. 8.

[44]Id. at 6.

[45]Findings of Fact, Conclusions of Law, and Order, Docket Entry No. 12-23, pp. 66-67.

(5th Cir. 2014), <u>cert.</u> <u>denied</u>, 135 S. Ct. 1735 (2015). To prevail under the <u>Strickland</u> standard a defendant must demonstrate (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. <u>Strickland</u>, 104 S. Ct. at 2064. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." <u>Id.</u>

"To satisfy the deficient performance prong, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness.'" <u>Hoffman v. Cain</u>, 752 F.3d 430, 440 (5th Cir. 2014) (quoting <u>Strickland</u>, 104 S. Ct. at 2064), <u>cert.</u> <u>denied</u>, 135 S. Ct. 1160 (2015). This is a "highly deferential" inquiry; "[t]here is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" <u>Id.</u> (quoting <u>Strickland</u>, 104 S. Ct. at 2065). "To satisfy the prejudice prong, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>Id.</u> (quoting <u>Strickland</u>, 104 S. Ct. at 2068).

Because Barnes' ineffective-assistance claims were rejected in state court, the issue is not whether this court "'believes the state court's determination' under the <u>Strickland</u> standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" <u>Knowles v. Mirzayance</u>, 129 S. Ct. 1411, 1420 (2009) (quotation omitted). In addition,

"because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Id.  When applied in tandem with the highly deferential standard found in 28 U.S.C. § 2254(d), review of ineffective-assistance claims is "doubly deferential" on habeas corpus review. Knowles, 129 S. Ct. at 1411; see also Richter, 131 S. Ct. at 788 (emphasizing that the standards created by Strickland and § 2254(d) are both "highly deferential," and "'doubly' so" when applied in tandem) (citations and quotations omitted); Beatty v. Stephens, 759 F.3d 455, 463 (5th Cir. 2014), cert. denied, 135 S. Ct. 2312 (2015) (same).

1.   Voir Dire

On direct appeal Barnes argued that his trial attorney was deficient for the way he broached the theory of self-defense during voir dire.[46]  The state court of appeals rejected this claim after making the following findings:

> Appellant asserts that his trial counsel devoted his entire voir dire to the subject of self-defense but his approach "hampered [him] in his obligation to educate members of the jury panel about the requirements of self-defense."  Also, appellant complains that trial counsel used a hypothetical that supported the State's theory of the case and "led jurors to misunderstand what Appellant's defense was likely to be."  Trial counsel did use a hypothetical that was not entirely consistent with the facts of the case to illustrate the concept of self-defense.  However, the hypothetical was only one technique trial counsel employed to educate the jury

---

[46]Appellant's Brief (Part 6), Docket Entry No. 10-26, p. 5; (Part 7), Docket Entry No. 10-27, pp. 1-2.

about self-defense.  He also explained that "you have to put yourself in the shoes of the person claiming [self-defense] and look at it from his standpoint alone at the time he claims it and evaluate it."  Trial counsel further explained that "a person asserting self-defense can consider the words spoken along with the bodily language that's being used by the person [he acts] in self-defense against" in determining the reasonableness of the person's actions.  Trial counsel emphasized the law of self-defense throughout voir dire, leading any prospective jurors who had trouble with the hypothetical back to the basic principle that "you as a citizen have a right to use deadly force against another who you reasonably believe is about to cause you serious bodily injury or death."

Barnes, 2009 WL 3248172, *12.  Based on these facts the state court of appeals concluded that Barnes failed to show that his trial counsel was deficient.  See id.

The Fifth Circuit has recognized that an "attorney's actions during voir dire are considered to be a matter of trial strategy." Teague v. Scott, 60 F.3d 1167, 1172 (5th Cir. 1995).  Strategic decisions made by counsel during the course of trial are entitled to substantial deference on federal habeas review.  See Strickland, 104 S. Ct. at 2065 (emphasizing that "[j]udicial scrutiny of counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight"); see also Yohey v. Collins, 985 F.2d 222, 228 (5th Cir. 1993) ("Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices.").  "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of

-36-

counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." <u>Lave v. Dretke</u>, 416 F.3d 372, 380 (5th Cir. 2005) (quoting <u>United States v. Jones</u>, 287 F.3d 325, 331 (5th Cir. 2002)).

The record confirms that both the prosecutor and defense counsel questioned potential jurors regarding the issue of self-defense.[47]  The record further confirms that defense counsel accurately characterized the law on self-defense and capably questioned the potential jurors to ensure that they understood and could follow the law.[48]  Barnes does not attempt to show that counsel's performance fell below professional norms or that his trial was tainted with obvious unfairness as the result of his counsel's chosen strategy during voir dire.  <u>See</u> <u>Lave</u>, 416 F.3d at 380.  He does not otherwise demonstrate that the state court's ultimate conclusion was objectively unreasonable.  Therefore, Barnes fails to demonstrate that he is entitled to relief under the doubly deferential standard that applies to ineffective-assistance claims on federal habeas review.

2.   <u>Closing Argument</u>

Barnes argued on direct appeal that his trial attorney was deficient during closing argument on guilt or innocence for failing

---

[47]Reporter's Record, vol. 3, Docket Entry No. 11-25, pp. 132-35; Docket Entry No. 11-26, pp. 6-27.

[48]<u>See</u> <u>id.</u>

to adequately explain the court's charge to the jury.[49]   The state
court of appeals rejected this claim after making the following
findings:

> Appellant next asserts that the "court's charge
> include[d] many legal terms and concepts whose meaning
> would not be immediately clear to the members of the
> jury" and that "[h]ad defense counsel explained the
> charge to the jury and explained how the defense evidence
> satisfied its requirement" the outcome likely would have
> been different.
>
> At the beginning of his closing argument, trial counsel
> stated "I'm not going to get into the jury charge.  You
> people are plenty intelligent and can read this thing
> yourselves."  From the record, trial counsel's strategy
> focused on the story of the relationship between
> appellant and the complainant and how that led up to both
> the incident in question and how appellant reacted during
> the incident.  He did remind the jury that in determining
> the facts and applying them to the charge that "as we've
> all agreed, you have to look at it from [appellant's]
> point of view as he saw it at the time.  And you have to
> consider the relationship between the parties."  He also
> admonished the jury to consider the reasonableness of
> appellant's actions in the situation, his right to defend
> himself, his right to try to live, and the real danger
> that appellant faced.  Trial counsel further highlighted
> weaknesses in the State's theory that this was a homicide
> committed during a burglary or robbery.  He also pointed
> out uncontroverted evidence from appellant and from the
> complainant's neighbors that supported appellant's
> self-defense claim.  It is apparent that the jury under-
> stood the argument because it acquitted appellant of the
> offense of capital murder and found him guilty of the
> lesser offense of murder.  Thus, we cannot say trial
> counsel's performance was deficient.

Barnes, 2009 WL 3248172, *12.

    As with Barnes' claim concerning the conduct of voir dire,
remarks by defense counsel during closing argument are matters of

---

[49]Appellant's Brief (Part 7), Docket Entry No. 10-27, pp. 2-3.

trial strategy that are afforded significant latitude. <u>See</u> <u>Kitchens v. Johnson</u>, 190 F.3d 698, 704 (5th Cir. 1999). The record reflects that defense counsel capably argued the facts of the case, emphasizing evidence to support the theory of self-defense and undermining the State's contention that Barnes committed capital murder by killing the victim during the course of a burglary or robbery.[50]   Considering the entire summation with the requisite deference, counsel's argument "clearly falls within the ambit of reasonable trial strategy." <u>Westley v. Johnson</u>, 83 F.3d 714, 724 (5th Cir. 1996).  Notably, the jury did not convict Barnes of capital murder as charged in the indictment, finding him guilty instead of a lesser-included offense.[51]   Based on this record, Barnes does not demonstrate deficient performance or actual prejudice.  Thus, Barnes does not establish that the state court's conclusion was objectively unreasonable.  Accordingly, Barnes fails to show that he is entitled to relief on this issue.

### 3.   Punishment Phase

During his direct appeal Barnes argued that his trial attorney was deficient for failing to present medical or psychiatric testimony during the punishment phase of the proceeding.[52]   The

---

[50]Reporter's Record, vol. 8, Docket Entry No. 12-9, pp. 117-24; Docket Entry No. 12-10, pp. 1-23.

[51]Verdict on Guilt/Innocence, Docket Entry No. 10-8, pp. 6-7.

[52]Appellant's Brief (Part 7), Docket Entry No. 10-27, pp. 4-5; (Part 8), Docket Entry No. 10-28, p. 1.

state court of appeals rejected this claim for the following
reasons:

> Appellant next asserts that, during the punishment phase,
> trial counsel failed to present medical and psychiatric
> testimony about appellant "to help the jury understand
> why [appellant] acted as he did."
>
> The decision whether to present witnesses is largely a
> matter of trial strategy. See Rodd v. State, 886 S.W.2d
> 381, 384 (Tex. App. — Houston [1st Dist.] 1994, pet.
> ref'd). Moreover, an attorney's decision not to present
> particular witnesses at the punishment stage may be a
> strategically sound decision if the attorney bases it on
> a determination that the testimony of the witnesses may
> be harmful, rather than helpful, to the defendant. See
> Weisinger v. State, 775 S.W.2d 424, 427 (Tex. App. —
> Houston [14th Dist.] 1989, pet. ref'd) (holding that it
> is trial counsel's prerogative, as matter of trial
> strategy to decide which witnesses to call). However, a
> failure to uncover and present mitigating evidence cannot
> be justified as a tactical decision when defense counsel
> has not conducted a thorough investigation of the
> defendant's background. Wiggins v. Smith, 539 U.S. 510,
> 521, 123 S. Ct. 2527, 2535, 156 L.Ed.2d 471 (2003);
> Rivera v. State, 123 S.W.3d 21, 31 (Tex. App. — Houston
> [1st Dist.] 2003, pet. ref'd).
>
> Here, trial counsel called only appellant's brother
> during the punishment phase to testify on appellant's
> behalf. While this may appear to be a failure to uncover
> and present mitigating evidence, we simply have no facts
> in the record regarding trial counsel's strategy at
> sentencing. It is possible that trial counsel determined
> that psychiatric testimony would not be favorable to
> appellant. Accordingly, we hold that appellant has not
> satisfied the first prong of Strickland. See Strickland,
> 466 U.S. at 687, 104 S. Ct. at 2064.

Barnes, 2009 WL 3248172, *13.

As in state court, Barnes provides no facts in support of his

claim concerning counsel's failure to call a medical or psychiatric

expert during the punishment phase of the trial, and he makes no

effort to show that such expert testimony would have been helpful.

-40-

"Claims of uncalled witnesses are disfavored, especially if the claim is unsupported by evidence indicating the witnesses's willingness to testify and the substance of the proposed testimony." Gregory v. Thaler, 601 F.3d 347, 353 (5th Cir. 2010) (citing Harrison v. Quarterman, 496 F.3d 419, 428 (5th Cir. 2007)). A petitioner who alleges ineffective assistance of counsel based on the failure to call either a "lay or expert witness" must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to the particular defense." Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) (citations omitted). Absent a showing that a particular witness would have offered testimony favorable to the defense, the petitioner's claim is speculative and conclusory, and does not demonstrate either deficient performance or resulting prejudice on his trial counsel's part. See Sayre v. Anderson, 238 F.3d 631, 636 (5th Cir. 2001). Because Barnes fails to demonstrate that an expert would have provided helpful testimony, he fails to show that the adjudication of his claim was contrary to or an unreasonable application of the Strickland standard. Therefore, he is not entitled to relief on this claim.

4.   Sudden Passion as a Defense

Barnes claims that his trial attorney was ineffective for failing to present as a defense during the guilt/innocence phase of

the trial an argument that the victim's death was caused under the immediate influence of "sudden passion" arising from an adequate cause.[53] The state habeas corpus court noted that, as a matter of Texas law, sudden passion is "a punishment stage issue in murder trials," and not a defensive theory that can be raised during the guilt/innocence phase.[54] Finding that trial counsel properly presented and argued sudden passion as a theory during punishment, the state habeas corpus court concluded that Barnes was not denied effective assistance of counsel.[55]

The record confirms that trial counsel solicited testimony from Barnes regarding both the issue of sudden passion and self-defense during the guilt/innocence phase of the trial.[56] Trial counsel requested and received a jury instruction and special issue on sudden passion in the court's charge on punishment.[57] Trial counsel also presented argument on the issue of sudden passion during the punishment phase.[58] Barnes has not shown that counsel's

---

[53]Petition, Docket Entry No. 1, p. 6.

[54]Findings of Fact, Conclusions of Law, and Order, Docket Entry No. 12-23, p. 61 (citing Tex. Penal Code § 19.02(d) (2012); and Benavides v. State, 992 S.W.2d 511, 528 (Tex. App. — Hous. [1st Dist.] 1999, pet. ref'd) (discussing the change in the law)).

[55]Findings of Fact, Conclusions of Law, and Order, Docket Entry No. 12-23, p. 62.

[56]Reporter's Record, vol. 6, Docket Entry No. 12-6, pp. 69, 109-21, 125-27.

[57]Court's Charge on Punishment, Docket Entry No. 10-9, pp. 8-10.

[58]Reporter's Record, vol. 10, Docket Entry No. 12-11, pp. 17-25.

performance fell below professional norms or that he was deficient
in any way. More importantly, Barnes has not demonstrated that the
state court's conclusion was objectively unreasonable.
Accordingly, Barnes is not entitled to relief on this issue.

## G.   Conflict of Interest by Trial Counsel

In addition to his ineffective-assistance claims, Barnes
contends that his trial attorney demonstrated a conflict of
interest when he advised Barnes during plea negotiations that the
State had "a very strong case."[59] The state habeas corpus court
rejected this claim after finding that Barnes failed to show that
counsel's advice constituted a conflict of interest or to
demonstrate that any actual conflict of interest existed between
Barnes and his trial attorney.[60]

To establish a constitutional violation on the basis of a
conflict of interest the defendant must demonstrate that an actual
conflict adversely affected his counsel's performance. See Cuyler
v. Sullivan, 100 S. Ct. 1708, 1718 (1980); Beets v. Collins, 986
F.2d 1478, 1483 (5th Cir. 1993). An actual conflict is one that
places defense counsel in a position of divided loyalty. See
United States v. Infante, 404 F.3d 376, 392 (5th Cir. 2005); see
also Mickens v. Taylor, 122 S. Ct. 1237, 1243 (2002) (explaining

---

[59]Petition, Docket Entry No. 1, p. 7.

[60]Findings of Fact, Conclusions of Law, and Order, Docket Entry
No. 12-23, pp. 63-64, 69.

that "an actual conflict of interest" means "precisely a conflict that affected counsel's performance—as opposed to a mere theoretical division of loyalties"). For example, "[a]n actual conflict exists if 'counsel's introduction of probative evidence or plausible arguments that would significantly benefit one defendant would damage the defense of another defendant whom the same counsel is representing.'" United States v. Lyons, 703 F.2d 815, 820 (5th Cir. 1983) (quoting Baty v. Balkcom, 661 F.2d 391, 395 (5th Cir. 1981)). For purposes of an ineffective-assistance inquiry, prejudice is presumed once a defendant establishes (1) that counsel acted under the influence of the conflict, and (2) that counsel's actions had an adverse effect upon his defense. See United States v. Culverhouse, 507 F.3d 888, 892 (5th Cir. 2007). An adverse effect is established with evidence that presents a plausible defense strategy or tactic that could have been pursued but for the actual conflict. See Perillo v. Johnson, 205 F.3d 775, 781 (5th Cir. 2000).

As a general matter, a criminal defense attorney has a duty to advise a defendant whether a plea agreement may be in his best interest, which necessarily entails an assessment of the strength of the prosecution's case. See, e.g., Bradbury v. Wainwright, 658 F.2d 1083, 1087 (5th Cir. 1981) (noting that defense counsel has a "duty to assist actually and substantially the defendant in deciding whether to plead guilty"). Barnes has not shown that by commenting on the strength of the State's case in connection with

-44-

plea negotiations his trial attorney actively represented conflicting interests or that his performance was adversely affected as the result of an actual conflict. Absent a showing that counsel's performance was hampered by an actual conflict of interest, Barnes has not demonstrated that he was denied effective assistance by conflict-free counsel or that a constitutional violation occurred. Barnes further fails to show that the state court's conclusion is objectively unreasonable. Therefore, he is not entitled to relief on this issue.

## H.    Ineffective Assistance of Counsel on Appeal

Barnes contends that he was denied effective assistance of counsel on direct appeal.[61]   Although Barnes does not allege specific facts in his Petition, he appears to claim as he did on state habeas review that his appellate attorney was deficient for failing to raise an ineffective-assistance claim on direct appeal concerning his trial counsel's failure to pursue a defense of sudden passion during the guilt/innocence phase of the trial.[62]  The state habeas corpus court rejected this allegation, concluding that Barnes failed to demonstrate that the proposed claim had merit or that appellate counsel was ineffective for failing to raise it.[63]

---

[61]Petition, Docket Entry No. 1, p. 8.

[62]Application for a Writ of Habeas Corpus, Writ No. 81,067-06, Docket Entry No. 12-23, p. 12.

[63]Findings of Fact, Conclusions of Law, and Order, Docket Entry No. 12-23, pp. 62-63, 68-69.

A claim of ineffective assistance on appeal is governed by the test set out in Strickland, 104 S. Ct. at 2052, which requires the defendant to establish both constitutionally deficient performance and actual prejudice. See Smith v. Murray, 106 S. Ct. 2661, 2667 (1986) (applying the Strickland test to a claim of ineffective assistance of counsel on appeal). To establish that appellate counsel's performance was deficient in the context of an appeal, the defendant must show that his attorney "was objectively unreasonable . . . in failing to find arguable issues to appeal — that is, that counsel unreasonably failed to discover non-frivolous issues and to file a merits brief raising them." Smith v. Robbins, 120 S. Ct. 746, 764 (2000) (internal citation omitted). If the defendant succeeds in such a showing, then he must establish actual prejudice by demonstrating a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on his appeal." Id.

For reasons explained previously, Barnes has not shown that his trial counsel was deficient for not raising the issue of sudden passion during the guilt/innocence phase of his trial because, as a matter of Texas law, this defensive theory is considered only during the punishment phase.[64] Because Barnes fails to establish

---

[64]Findings of Fact, Conclusions of Law, and Order, Docket Entry No. 12-23, p. 61 (citing TEX. PENAL CODE § 19.02(d) (2012); and Benavides v. State, 992 S.W.2d at 528 (discussing the change in the law)).

that his proposed claim had merit, he does not demonstrate that his appellate counsel was deficient or that there is a reasonable probability that he would have prevailed on appeal if the proposed claim had been presented.   Barnes does not show that he was denied effective assistance of counsel on appeal or that the state court's conclusion was objectively unreasonable.   Therefore, he is not entitled to relief on this claim.

Because Barnes has failed to establish a valid claim for relief, Respondent's Motion for Summary Judgment will be granted and the Petition will be denied.

## IV.   Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner.   A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Tennard v. Dretke, 124 S. Ct. 2562, 2565 (2004) (quoting Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)).   Under the controlling standard this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner

-47-

or that the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Miller-El v. Cockrell</u>, 123 S. Ct. 1029, 1039 (2003). Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 120 S. Ct. at 1604.

A district court may deny a certificate of appealability, <u>sua sponte</u>, without requiring further briefing or argument. <u>See</u> <u>Alexander v. Johnson</u>, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the court concludes that reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. Because the petitioner does not allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

### V.  Conclusion and Order

The court **ORDERS** as follows:

1.  Respondent Stephens's Motion for Summary Judgment (Docket Entry No. 19) is **GRANTED**.

2.  Andrew Barnes' Petition for a Writ of Habeas Corpus By a Person in State Custody (Docket Entry No. 1) is **DENIED**, and this action will be dismissed with prejudice.

3.  A certificate of appealability is **DENIED**.

-48-

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 11th day of February, 2016.

SIM LAKE
UNITED STATES DISTRICT JUDGE